IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

STANLEY L. SEIPEL,

                Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner
of Social Security,

                Defendant.

OPINION AND ORDER

15-cv-727-wmc

---

Under 42 U.S.C. § 405(g), plaintiff Stanley L. Seipel seeks judicial review of a denial of his application for disability insurance benefits by the Commissioner of Social Security. Before the court is plaintiff's motion for summary judgment which asserts that the Administrative Law Judge ("ALJ") erred by failing to assess adequately: (1) medical findings made by the United States Department of Veterans Affairs ("VA"), and (2) a finding of long-term disability by his insurer, Hartford Insurance. (Dkt. #8.) For the reasons discussed below, the court agrees with defendant that neither assertion is a sufficient basis for remand.

BACKGROUND[1]

**A. Claimant**

Plaintiff Seipel, born on March 14, 1961, was 50 years old on his alleged disability onset date, April 28, 2011. (AR 19, 25.) Seipel has at least a high school education and

---

[1] The Administrative Record ("AR") is available at dkt. #7.

can speak English, and he worked full-time as an instructor in the United States military "for many years." (AR 25.) Seipel claims that he is disabled based on several physical impairments, including "right shoulder arthralgia, back impairment, and coronary artery disease," all of which the ALJ found to be severe impairments in step two of the Social Security Administration's five-step evaluation process.[2] (AR 22.)

### B. Medical Record

Plaintiff emphasizes several medical treatment notes, reflecting his heart, shoulder and back conditions, beginning in 2011. More specifically, Seipel had triple bypass surgery for his coronary artery disease on April 28, 2011, and in November of that same year, he underwent a stent placement procedure. (AR 442, 449.) As for his shoulder, a physical therapist noted on October 26, 2011, that Seipel was experiencing "extreme" and "unusual" pain in his right shoulder, had a "poor" prognosis. (AR 569.) With regard to his back, a "Disability Benefits Questionnaire" completed for Seipel's application for disability benefits from the VA on January 3, 2012, included Dr. Craig Saltzgiver's notes that Seipel had been diagnosed with degenerative disk disease of the lumbar spine and had "less movement than normal" due to his back-related impairments. (AR 525-28.)

As cited by plaintiff, that same questionnaire also included the medical opinion that Seipel's back and shoulder impairments limited his ability to lift, stand, push, pull, stoop,

---

[2] The ALJ found that three other impairments -- "hydradenitus suppurativa" (a rare skin condition), Seipel's weight and sensory-neuro hearing loss -- to be non-severe. (AR 22.) For the sake of additional context, the literal meaning of "arthralgia" is "joint pain"; it is typically used instead of "arthritis" when the condition is not inflammatory. https://en.wikipedia.org/wiki/Arthralgia.

kneel and do overhead work, as well as "preclude[d] gainful employment" at the "heavy or moderate" level. (AR 541.) Ultimately, however, Dr. Saltzgiver concluded in that questionnaire that Seipel was "able to seek and maintain substantially gainful employment in the light labor or sedentary employment positions based on [service connected] conditions." (*Id.*)

**C. ALJ's Decision**

ALJ John Pleuss held a hearing by video on February 20, 2014. In an opinion dated April 18, 2014, the ALJ concluded that Seipel was not disabled. (AR 26.) After finding that Seipel had not engaged in substantial gainful activity at the first step, the ALJ found that his impairments did not result in a finding of disability at the second and third steps. The ALJ then determined Seipel's residual functional capacity ("RFC"):

> The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except for the following restrictions. The claimant requires a sit/stand option so that he need not sit or stand for more than 30 minutes at a time. He is precluded from more than occasional reaching with his right hand/arm. He is precluded from any overhead reaching with his right hand/arm.

(AR 22.) In explaining his formulation of Seipel's RFC, the ALJ credited to some degree Seipel's report of subjective symptoms, namely pain and discomfort from sitting or standing for too long, and reaching or lifting weight with his right arm. (AR 23.) Consistent with those findings, the ALJ also credited Seipel's claimed inability to perform his past medium-level work in the military. (*Id.*)

3

Among the medical evidence that the ALJ relied upon in reaching the RFC were treatment notes, which suggested that Seipel recovered well from his cardiac symptoms after surgery and a stent placement in April and November of 2011, respectively, and Seipel's own reports as early as December 14, 2011, that he was not experiencing chest pain, palpitations or shortness of breath, even with exertion. (AR 449.) The ALJ also cited medical evidence of Seipel's additional management of his cardiac symptoms after the hearing, including a treatment note, dated November 1, 2013, indicating that Seipel could not remember the last time he had an episode of chest pain, at least in part because he was avoiding activity at a level that would cause chest pain. (AR 837.)

The ALJ further relied on medical evidence suggesting Seipel had been able to manage his back and shoulder impairments with conservative treatment, including notes of Seipel reporting "2/10 ache pain" after physical therapy. (AR 641.) With respect to treatment notes reflecting Seipel's limited ability to do overhead activities with his right arm (AR 722), as well as Seipel's need to stand to relieve his back (AR 54-55), the ALJ explained that he incorporated those limitations into the RFC by including the sit/stand option and the restriction on reaching. (AR 24.) The ALJ similarly found the restrictions determined by the treating physician supported by the medical evidence (AR 24), noting in particular that the treating physician recommended limitations regarding overhead movements of Seipel's right arm, but otherwise cleared him for employment at the light or sedentary level. (AR 742.) Finally, the ALJ also gave great weight to the opinion of the state agency medical consultants (AR 24), who found based on their review of the medical

record that Seipel was capable of light work with occasional reaching with his right arm. (AR 621.)

Given his RFC, the ALJ found that Seipel was capable of performing his past relevant work as an "instructor for the military," which the vocational expert ("VE") at the hearing testified was a light exertional job. (AR 25.) Consistent with the VE's testimony at the hearing, the ALJ also found that Seipel was able to perform several other jobs available in the national economy, including "order filler," "information clerk" and "counter clerk."

OPINION

Plaintiff raises two arguments in support of a remand on appeal. First, plaintiff argues that the ALJ "completely ignored the VA findings" and erred by failing to determine what weight should be assigned to "the VA decision." (Pl.'s Opening Br. (dkt. #9) at 6.) Second, plaintiff argues that the ALJ failed to address his insurer's findings that he was eligible for long-term disability. The court addresses both arguments below.

I. VA Medical Evidence

As for plaintiff's first argument, plaintiff offers just one example of a medical finding from the VA that the ALJ "ignored": Seipel's osteoarthritis of the right shoulder "is service connected." (AR 666.) In response, defendant disputes that this single record entry "is akin to an award of veteran's disability benefits," as plaintiff's briefing seems to be suggesting at least implicitly, if not explicitly. (Def.'s Resp. Br. (dkt. #10) at 4.) Perhaps as further clarification, plaintiff also argues that this VA medical note should have spurred

5

the ALJ to further "develop the record and inquire about that situation." (Pl.'s Reply Br. (dkt. #11) at 2.)

While plaintiff is correct that the ALJ did not particularly address this VA notation of a "service connected" injury in his decision, he *did* credit Seipel's "right shoulder arthralgia" as a severe impairment, as well as noted Seipel's subjective complaints of pain when reaching, lifting or doing overhead movements with his right arm, which he credited by incorporating reaching limitations in the RFC. (AR 22-24.) Moreover, plaintiff never explains why the "service connected" shoulder impairment note should have been of any more significance to the ALJ than the shoulder-related symptoms themselves, which were noted and obviously credited. Finally, even a finding by the VA that a claimant is unemployable "does not establish that he is entitled to SSA benefits." *Bird v. Berryhill*, 847 F.3d 911, 913 (7th Cir. 2017) (citing *Allord v. Barnhart*, 455 F.3d 818, 820 (7th Cir. 2006)).

As an alternative argument regarding the ALJ's alleged failure to consider and weight medical evidence from the VA, plaintiff contends that remand is required because he failed to explain his consideration of that evidence in accordance with applicable Social Security regulations. Specifically, plaintiff cites SSR 06-03p, which provides, in relevant part, that "evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered." 2006 WL 2329939, at *6. As defendant correctly points out in response, however, plaintiff offers *no* support for his assertions that the ALJ failed to appreciate a "decision" or "disability determination" by the VA. (*See* Pl.'s Opening Br. (dkt. #9) at 7-8.) In contrast to counsel's characterization of those findings,

the VA medical treatment notes reflect only the need for some postural, lifting and movement limitations due to Seipel's shoulder and back impairments, each of which are reflected to at least some degree by restrictions that the ALJ incorporated in the RFC. As previously noted, those materials also include a finding that "[Seipel] *is* able to seek and maintain substantially gainful employment in the light labor or sedentary employment positions based on SC-conditions." (AR 541 (emphasis added).) Not only did the ALJ cite these notes *and* explain that the VA's recommended restrictions were consistent with his review of the medical record (AR 24 (citing AR 722, 742)), but he also gave great weight to the opinion of Dr. Pat Chan, a state agency medical consultant, who opined in assessing Seipel's RFC that the VA's recommendation of light work was consistent with the medical evidence and was therefore entitled to great weight. (AR 74.)

Given that an ALJ's decision need not explicitly address every impairment, especially when it is factored into the decision through a medical professional's review of the evidence, plaintiff falls far short of demonstrating error here based on the assertion that the ALJ's consideration of findings from the VA was incomplete. *See Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). In his reply brief, plaintiff points out that he argued in a memorandum addressed to the ALJ before the hearing that the limitations recommended by VA, in combination with his cardiac condition, which the VA did not consider since it was not related to his military service, should result in him being limited to sedentary work.[3] (AR 226.) Crucially, however, plaintiff does not argue that the ALJ's

---

[3] Plaintiff asserts that the "Grid Rule" would direct a finding of disability if the ALJ had limited Seipel to sedentary work. (*See* Pl.'s Reply Br. (dkt. #11) at 3.)

analysis of his reasons for not including additional restrictions into Seipel's RFC due to heart-related limitations was inconsistent with the medical record. Thus, plaintiff's first argument for remand fails.

## II. Insurer's Long-Term Disability Finding

Plaintiff's other argument for remand is that the ALJ failed to address the finding of his eligibilty for long-term disability benefits by Seipel's insurer, Hartford Insurance. In particular, plaintiff cites a letter from Hartford Insurance, which stated that Seipel's "LTD benefits became effective on 7/27/2011" under the following general definition of disability:

1. during the Elimination Period, you are prevented from performing one or more of the Essential Duties of Your Occupation;
2. for the 24 months following the Elimination Period, you are prevented from performing one or more of the Essential Duties of Your Occupation, and as a result your Current Monthly Earnings are less than 80% of your Indexed Pre-disability Earnings;
3. after that, you are prevented from performing one or more of the Essential Duties of Any Occupation.

(AR 229-30.) A subsequent letter from Hartford Insurance in the medical record further indicates Hartford's finding that Seipel met the policy definition of disability and would continue to receive long-term disability benefits. (AR 231.) While the ALJ did not address the Hartford Insurance letters in his decision, he had certainly been made aware of them at the hearing based on his discussion with Seipel's counsel regarding their content and relevance, as well as Seipel's testimony that he was "on long-term disability" with Hartford Insurance. (AR 38-39, 41.)

8

In support of this independent argument for remand, plaintiff asserts that the ALJ was required to address Hartford Insurance's finding of disability, again pointing to the language in SSR 06-03p providing that "evidence of a disability decision by another governmental *or nongovernmental agency* cannot be ignored and must be considered," although the relevance of a disability determination made by "other governmental and nongovernmental agencies" may also be limited because of their application of different standards than the Social Security Administration. 2006 WL 2329939, at *6, *7 (emphasis added). In particular, "the adjudicator should explain the consideration given to these decisions." *Id*.

In response, defendant argues that the ALJ's failure to mention the letters in his decision is immaterial, since his findings are consistent with Hartford Insurance's findings of disability. With respect to the first two prongs of Hartford's definition of disability, defendant correctly points out that the ALJ's finding that Seipel could no longer perform his past work at the level at which he had done it previously is consistent with Hartford's findings. As for the third prong, however, defendant argues less convincingly that the ALJ's RFC restrictions regarding lifting more than 20 pounds, the option to sit or stand and reaching with his right arm are consistent with a finding that Seipel was prevented from performing at least one essential duty of any occupation.[4] This is particularly a stretch, since the third element of Hartford Insurance's disability definition appears to be akin to Social Security Administration's definition of disability -- the "inability to engage in any

---

[4] As defined by Social Security Administration regulations, "[l]ight work involves lifting no more than 20 pounds at a time[.]" 20 C.F.R. § 404.1567(b).

substantial gainful activity" -- than defendant's analogy to the ALJ's decision suggests. 42 U.S.C. § 416(i)(1).

Still, similar to the flaws in plaintiff's arguments regarding the VA's findings, plaintiff fails to offer the ALJ or this court the definition of the phrase "Essential Duties of Any Occupation" in the Hartford Insurance policy or what Hartford considers an inability to "perform[] one or more of the those duties," much less a citation to *any* medical evidence that Hartford analyzed in reaching its disability determination or explanation for its findings. Not only was this plaintiff's burden, but he was also in the best position to direct the ALJ to the policy and develop an argument as to the insurance company's finding of disability. *See generally Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017) ("It was Summers's burden, not the ALJ's, to prove that she was disabled.").

Without at least some basis to find the Hartford determination might have meaningful application to the issues under the Social Security Act and regulations, the court is unable to conclude the ALJ abused his discretion by failing to consider remand for further inquiry. *See Allord*, 455 F.3d at 820 ("Determinations of disability by other agencies do not bind the Social Security Administration[.]"); *Warner v. Astrue*, No. 4:10-cv-61-WGH-RLY, 2011 WL 4036583, at *15 (S.D. Ind. Sept. 12, 2011) (finding that in light of the dearth of any "evidence in the record that provides the rationale or evidentiary support that the insurer used to determine disability," a fax sheet indicating a finding of long-term disability and copy of the insurance policy "does not amount to the type of 'decision' by a nongovernmental agency that SSR 06-03p requires an ALJ to discuss, and

the ALJ did not commit reversible error by failing to address it"). Accordingly, plaintiff's second basis for remand also falls short.

ORDER

IT IS ORDERED that the decision of defendant Nancy A. Berryhill, Acting Commissioner of Social Security, denying plaintiff's application for disability benefits is AFFIRMED. The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 25th day of January, 2018.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
U.S. District Court Judge